UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT M. CURREY,<br><br>Plaintiff,<br><br>v.<br><br>DENIS McDONOUGH et al.,<br><br>Defendant. | No.  2:26–cv–02079–TLN–CKD PS<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS<br><br>(ECF Nos. 1, 2, 3) |

Plaintiff Scott M. Currey initiated this action on June 5, 2026, with a pro se Complaint and a motion to proceed in forma pauperis ("IFP"). (ECF Nos. 1, 2.) Plaintiff's application to proceed in forma pauperis makes the showing required by 28 U.S.C. § 1915, and the request is granted.

Additionally, Plaintiff filed motion for a temporary restraining order ("TRO"). (ECF No. 3.) Because Plaintiff proceeds without counsel, this case is referred to a United States Magistrate Judge pursuant to Local Rule 302(c)(21). *See* 28 U.S.C. § 696(b)(1). The *ex parte* motion for emergency injunctive relief is appropriate for decision without oral argument and is submitted on the record and briefs on file. *See* Local Rule 230(g).

For the reasons set forth below, the Court recommends DISMISSING the Complaint with leave to amend and DENYING Plaintiff's motion for a temporary restraining order.

/ / /

1

**SCREENING REQUIREMENT**

Pursuant to 28 U.S.C. § 1915(e), the court must screen every in forma pauperis proceeding, and must order dismissal of the case if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (2000). In performing this screening, the court liberally construes a pro se plaintiff's pleadings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).

**BACKGROUND**

Plaintiff Scott M. Currey is a veteran of the United States Marine Corps, beginning his service in 1990 and serving on active duty until 1995. (ECF No. 1 at ¶ 36.) Plaintiff alleges that during his service, he suffered "chronic exposure to low-frequency mechanical resonance and continuous vessel motion," which allegedly caused traumatic brain injury. *Id*. at ¶ 37.

On September 10, 2025, Plaintiff sought emergency mental health intervention at Defendant McClellan VA Clinic. *Id*. at ¶ 40. Plaintiff alleges that on December 30, 2025, the United States Department of Veterans Affairs ("VA") "granted [post-traumatic stress disorder] PTSD 70% [disabling] and [traumatic brain injury] TBI 10%. [disabling]" *Id*. at ¶ 41. Plaintiff further alleges that on April 20, 2026, Defendants sent Plaintiff a rating decision letter which granted a Total Disability based on Individual Unemployability ("TDIU") rating at 100% effective September 30, 2025. *Id*. at ¶ 42. Plaintiff alleges the rating decision letter certified his inability to perform complex tasks and that he was entitled to immediate accommodation protocols that never went into effect. *Id*.

Plaintiff alleges he has a processing speed limitation, working memory impairment, and suffers from cognitive fatigue and emotional dysregulation. *Id*. at ¶¶ 63-69. Plaintiff alleges these limitations prevent him from "preventing multi-step tasks," including sequential phone calls, form completion, and navigation of online portals. *Id*. at ¶ 65. He also alleges he requires "approximately 10-minute intervals between complex information inputs to consolidate and respond." *Id*.

The Complaint alleges that on or about May 1, 2026, Defendant McClellan VA Clinic authorized a community care referral for Plaintiff to receive a specialized TBI evaluation at the University of California, San Francisco ("UCSF") Medical Center. *Id*. at ¶ 48. The Complaint cites to USCF MyChart records dated May 13, 2026, that state the new referral request was sent to Sutter Health. *Id*. at ¶ 49. The Complaint alleges upon contacting a customer service representative, Plaintiff was informed that the referral was sent to Sutter Health by mistake, and that he would need to submit a new referral request, wait for re-authorization, contact Sutter Health, and re-schedule with USCF. *Id*. at ¶ 50. The Complaint alleges Defendant McClellan VA clinic did not offer accommodation to complete the referral paperwork on Plaintiff's behalf. *Id*. at ¶ 51.

Plaintiff alleges that on May 15, 2026, UCSF formally denied the referral for the following reasons: "(1) UCSF does not have an acute TBI program… [nor does UCSF] offer acute impatient rehabilitation programs. (2) [Plaintiff]'s TBI injury [fell] outside of the eligibility criteria for [UCSF's] Neurorecovery Clinic, which evaluates patients with TBIs occurring within the past 24 months." *Id*. at ¶ 53.

Separately, Plaintiff alleges in March 2026 that Solano County Child Welfare Services conducted a welfare check on Plaintiff's residence following reports of daughter L.C.'s self-harming behavior. *Id*. at ¶ 60. Following the wellness check, Plaintiff and L.C. were instructed to secure immediate mental health services, and Plaintiff alleges that the subsequent wellness report was sent to social workers at Defendant McClellan VA Clinic. *Id*. at ¶ 61. Plaintiff alleges that Defendants did not expedite his mental health referrals, assign a dedicated case manager, or authorize emergency community care for L.C. *Id*. at ¶ 62.

Plaintiff's wife, Hui Xiang Currey, allegedly contacted a UK veteran's mental health charity on May 26, 2026, for emergency residential treatment, but was turned away due to Plaintiff not having served in the UK Armed Forces. *Id*. at ¶¶ 80-81. In an addendum to the Complaint, Plaintiff alleges that he has contacted Clinic Valmont, based in Glion sur Montreux, Switzerland, which confirmed availability of an inpatient neurorehabilitation program for Plaintiff on June 8, 2026. (ECF No. 1 at 54).

3

On June 5, 2026, Plaintiff filed this action against Denis McDonough, in his official capacity as Secretary of Veterans Affairs, Veterans Health Administration, Northern California Healthcare System, and McClellan VA Clinic. (ECF No.1.) Plaintiff also filed a motion to proceed in forma pauperis, and a motion for a temporary restraining order ("TRO"). (ECF Nos. 2, 3.)

**PLEADING STANDARDS**

**1.   Screening Requirement**

Pursuant to 28 U.S.C. § 1915(e), the court must screen every in forma pauperis proceeding, and must order dismissal of the case if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith,* 203 F.3d 1122, 1126-27 (2000). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In reviewing a complaint under this standard, the court accepts as true the factual allegations contained in the complaint, unless they are clearly baseless or fanciful, and construes those allegations in the light most favorable to the plaintiff. *See Neitzke*, 490 U.S. at 327; *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A formulaic recitation of the elements of a cause of action does not suffice to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend

4

unless the complaint's deficiencies could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc).

### 2. TRO Standard under Rule 65

The relief Plaintiff seeks is governed by Rule 65 of the Federal Rules of Civil Procedure. The analysis for granting a temporary restraining order ("TRO") or preliminary injunction is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Both remedies are "extraordinary and drastic," *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal citation omitted), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking [injunctive relief] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. Courts in the Ninth Circuit may alternately apply a "serious questions" test and issue injunctive relief where a plaintiff raises "serious questions going to the merits" and "the balance of hardships tips sharply in plaintiff's favor," if the other *Winter* factors are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

### DISCUSSION

### 1. The Complaint

#### a. Identity of Plaintiff in this Action

Plaintiff appears individually and as a "next friend" for L.C., a minor. (ECF No. 1.) However, the section of the Complaint labeled "Parties" lists Plaintiff Scott M. Currey, L.C., and Plaintiff's wife, Hui Xiang Currey, as a plaintiff and "next friend" for both Plaintiff and L.C. *Id*. at ¶¶ 15, 26. The Complaint contains an addendum titled: "Clarification of Plaintiff Identity and Capacity." (ECF No. 1-2 at 1-2.) The addendum states Plaintiff is the sole plaintiff in this action, and appears as a next friend to L.C., who is not an independent litigant. *Id*. at 1.

The Complaint's allegations as they relate to L.C. are inapplicable, as she is not a party to the action. *See Simon v. Hartford Life, Inc.* 546 F. 3d 661, 664 (9th Cir. 2008) ("It is well

established that the privilege to represent oneself pro se provided by § 1654 is personal to the litigant and does not extend to other parties or entities.") Therefore, the Court directs the Clerk to terminate L.C. as a plaintiff on the docket.

### b. Section 504 of the Rehabilitation Act

Plaintiff alleges Defendant VA Entities violated Section 504 of the Rehabilitation Act. (ECF No. 1 at ¶¶ 87-96.) To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must show "(1) the plaintiff is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall v. County of Kitsap*, 260 F. 3d 1124, 1135 (9th Cir. 2001). To recover compensatory damages under the Rehabilitation Act, a plaintiff "must prove intentional discrimination on part of the defendant," requiring pleading deliberate indifference. *Id*. at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139. "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel v. Kent School Dist*., 648 F. 3d 965, 974 (9th Cir. 2011). The entity's failure to act "must be a result of conduct that is more than negligent and involves an element of deliberateness." *Duvall*, 260 F. 3d at 1139.

Plaintiff alleges he is an individual with a disability as defined by Section 504. (ECF No. 1 at ¶ 90.) Further, Plaintiff alleges he is otherwise qualified to receive the benefits in the form of VA healthcare due to "meeting all the eligibility criteria for VA medical benefits based on his service-connected disability status." *Id*. Plaintiff alleges Defendants discriminated against him by:

(1) "imposing a qualification standard that his disability prevents him from meeting," such as requiring him to complete forms on his own, track referrals, coordinate schedules, and follow up with VA officials via 1-800 numbers;

(2) "failing to provide reasonable accommodations," by not modifying "policies, practices, or procedures to accommodate Mr. Currey's alleged cognitive limitations, assigning a case manager, assistive technology, nor additional staff assistance";

(3) "applying policies with discriminatory effect," by having facially neutral administrative requirements that have a "disparate impact on veterans with TBI-related executive dysfunction";

(4) And "deliberate indifference to known disability," by allegedly having knowledge of Plaintiff's rating decision but continuing "to impose requirements [Defendants] knew [Mr. Currey] could not meet," and denying care based on Plaintiff's failure to meet these standards.

(ECF No.1 at ¶¶ 91(a)-(d).)

District courts are barred from reviewing VA decisions affecting the provision of veterans' benefits under 38 U.S.C. § 511(a). *Blue Water Navy Vietnam Veterans Association, Inc. v. McDonald*, 830 F. 3d 570, 573 (D.C. Cir. 2016). "Or to put it another way, review in the district courts is barred when 'underlying the claim is an allegation that the VA unjustifiably denied a veterans' benefit.'" *Id*. quoting *Price v. United States*, 228 F. 3d 420, 421 (D.C. Cir. 2000). The Ninth Circuit has held that this preclusion extends "not only to cases where adjudicating veterans' claims requires the district court to determine whether the VA acted properly in handling a veteran's request for benefits, but also to those decisions that may affect such cases." *Veterans for Common Sense v. Shinseki*, 678 F. 3d 1013, 1025 (9th Cir. 2012). However, § 511(a) does not bar a claim when the issue is "whether [Plaintiff] may *reach* their previously awarded benefits is distinct from the underlying benefit awards themselves." *Powers v. McDonough*, 713 F. Supp. 3d 695, 716 (C. D. Cal. 2023).

The Court finds that Plaintiff's allegations relating to a denial of a case manager as the basis of a Section 504 claim is a denial of benefits determination and, therefore, fails to state a claim. *See Shinseki*, 678 F. 3d at 1025.

However, the Court finds that the remainder of Plaintiff's Section 504 allegations resemble a failure to accommodate claim, and are therefore, not barred by § 511(a). *See Powers* 713 F. Supp. 3d. at 716. Nonetheless, the Court finds that Plaintiff has not adequately alleged that Defendants were on notice of Plaintiff's limitations. *See Melton by and through Mosier v. California Department of Developmental Disabilities*, 2021 WL 633866, at *7 (N.D. Cal. Feb.

18, 2021) (dismissing a Section 504 claim with leave to amend on the basis of insufficiency of allegations of notice and failure to act); *see also, Iqbal*, 556 U.S., at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Therefore, the Section 504 claim should be dismissed with leave to amend to the extent Plaintiff can plead factual allegations revealing Defendants were on notice of Plaintiff's inability to perform the tasks alleged and requiring accommodation because of his disability.

### c.  Fifth Amendment Due Process

Plaintiff also raises a procedural due process claim against Defendants. The elements are (1) a showing of a deprivation of a constitutionally protected interest; and (2) a denial of adequate constitutional protections. *See Brewster v. Bd. Of Educ.*, 149 F. 3d 971, 982 (9th Cir. 1998).

Plaintiff alleges he has a constitutionally protected interest in VA healthcare benefits that arise from a (1) statutory entitlement under 38 U.S.C. § 1710; (2) a regulatory entitlement under 38 C.F.R. Part 17; (3) the VA's regulations creating a "reasonable expectation of continued receipt"; and (4) promissory estoppel from the VA's acceptance of Plaintiff grant of TDIU benefits. (ECF No. 1 at ¶ 99.)

The Court finds Plaintiff has adequately pled a constitutionally protected property interest in the form of his VA benefits. *See Cushman v. Shinseki*, 576 F. 3d 1290, 1297 (Fed. Cir. 2009) ("It is well established that disability benefits are a protected property interest and may not be discontinued without due process of law.") However, the Court finds that Plaintiff has failed to plead any factual allegations concerning a deprivation of those property interests. Instead, Plaintiff alleges (1) Defendant VA entities deprived Plaintiff of his property interests without due process by (1) failing to provide pre-deprivation notice and opportunity to be heard, (2) failing to provide post-deprivation remedies that accommodated Plaintiff's disability limitations; (3) applying arbitrary and capricious standards; and (4) "creating a Kafkaesque procedural trap where the VA requires Plaintiff to navigate complex systems to challenge the VA's refusal to help him navigate complex systems." (ECF No. 1 at ¶ 102.) These allegations are devoid of facts showing that Plaintiff was deprived of a property interest without due process. *See Iqbal*, 556 U.S., at 678

("[T]he pleading standard Rule 8 announces does not require 'detailed factual accusations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") Accordingly, the Court recommends dismissing this claim with leave to amend to the extent Plaintiff can plead additional facts to support his claim.

### d. Mission Act, 38 U.S.C. § 1703

Plaintiff alleges all Defendants violated the Mission Act. This statute grants the Secretary of Veterans Affairs the power to extend healthcare services to a covered veteran to "(a) any healthcare provider participating in the Medicare program under Title XVIII of the Social Security Act, including any physician furnishing service under such a program; (b) the Department of Defense; (c) the Indian Health Service; (d) any Federally-qualified health center (as defined in section 1905(l)(2)(B) of the Social Security Act; and (e) any healthcare provider not otherwise covered… that meets the criteria established by the Secretary." 38 U.S.C. § 1703(c)-(d) (citations omitted).

Plaintiff alleges that Defendants have violated the Mission Act by failing to authorize timely community care; failing to ensure referral accuracy; failure to provide care coordination; and a failure to accommodate disability in community care access. (ECF No. 1 at ¶¶ 105-112.)

Plaintiff concedes that this statute does not have a private right of action. (ECF No. 3 at 25.) Upon review of the statute, the Court cannot identify any mechanism for a private right of action. "As such, any private right of action must be implied." *Gen-Probe, Inc. v. Center for Neurologic Study*, 853 F. Supp. 1215, 1217 (S.D. Cal. 1993). The legislative history also fails to demonstrate an intent to create a private right of action. Pub. L. 115-182 (2018). As such, "[t]he question whether Congress… intended to create a private right of action, has been definitely answered in the negative." *Gen-Probe,* 853 F. Supp., at 1217 quoting *Rapid Transit Advocates v. S. Cal. Rapid Transit*, 752 F. 2d 373, 377 (9th Cir. 1985). Therefore, Plaintiff's Mission Act Claim should be dismissed without leave to amend.

### e. Administrative Procedure Act, 5 U.S.C. § 706

Plaintiff brings a claim against Defendants under the Administrative Procedure Act ("APA") 5 U.S.C. § 706. (ECF No. 1 at ¶ 114.) Plaintiff alleges Defendants' conduct denied him

healthcare access through "disability-based administrative barriers" and constitutes arbitrary and capricious agency action by: (1) ignoring the medical certification of Plaintiff's medical limitations found in the TDIU letter; (2) inconsistently applying standards between disabled and non-disabled veterans; (3) failing to consider reasonable alternatives that would accommodate Plaintiff's disability; and (4) producing outcomes, such as a 260-day delay in producing the TDIU letter, that "no rational agency would accept." *Id*.

The Court finds that as currently pled, the APA claim is barred under 38 U.S.C. § 511(a). *See Price*, 228 F. 3d, at 421. For example, in *Vietnam Veterans of America v. Central Intelligence Agency*, the plaintiffs alleged Administrative Procedure Act violations contained in a training letter written by the defendants. 2010 WL 11730743, at *5 (N.D. Cal. Nov. 15, 2010). The court found that the plaintiffs' allegations regarding the letter suggested it "reflect[ed] a decision made by [the defendants] as to how to evaluate claims for benefits." Therefore, the court found it lacked jurisdiction to hear the claim under § 511(a). *Id*. Here, as currently pled, the allegations regarding Defendants ignoring the certification of Plaintiff's medical limitations in the TDIU letter, inconsistently applying standards, and failing to consider reasonable alternatives for Plaintiff, resemble a "preliminary decision necessary to a final decision," by Defendants as to evaluating claims for benefits which would be barred by § 511(a). *Vietnam Veterans of America*, 2010 WL 11730743, at *5. Therefore, the APA claim should be dismissed with leave to amend to the extent Plaintiff can allege additional factual allegations that would not directly concern the provision of veterans' benefits.

### f.   Intentional Infliction of Emotional Distress

Plaintiff claims all Defendants are liable for intentional infliction of emotional distress ("IIED"). To state a claim of IIED under California law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress via extreme and outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).

Plaintiff alleges Defendants engaged in extreme and outrageous conduct by "using a

10

veteran's service-connected disability as the instrument to deny him healthcare, after certifying that disability…" (ECF No. 1 at ¶ 120(a).) Plaintiff alleges that this conduct was intentional because the Defendants knew of Plaintiff's disability-related limitations and "deliberately imposed requirements," that Plaintiff could not perform. *Id*. at ¶ 120(b). Plaintiff alleges he suffered from "anxiety, depression, and despair," after Defendants' alleged refusal to authorize L.C.'s care. *Id*. at ¶ 120(c).

The Complaint fails to state claim for IIED because it fails to plead factual allegations that Defendants were on notice that Plaintiff could not perform the tasks required, or that Defendants' imposition of these tasks were deliberate to demonstrate intent to cause severe emotional distress. *See Iqbal*, 556 U.S., at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Therefore, the claim should be dismissed with leave to amend to the extent Plaintiff can plead additional factual allegations to support notice of Plaintiff's disability and intent to cause severe emotional distress.

### g. Leave to Amend

If the Court finds that a complaint or claim should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend.  *See Davis v. Miranda*, 2020 WL 1904784, at *2 (E.D. Cal. Apr. 17, 2020).  Leave to amend should be freely granted when justice so requires, Fed. R. Civ. P. 15(a), and if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citation omitted)).

If Plaintiff so chooses, the Court grants Plaintiff an opportunity to amend his Section 504, Fifth Amendment Due Process, APA and IIED claims. An amended complaint should be titled "First Amended Complaint." Local Rule 220 requires that an amended complaint be complete by itself without reference to any prior pleading.

11

**2. Motion for a Temporary Restraining Order**

Plaintiff moves for a motion for a temporary restraining order against Defendants which requests injunctive relief in the form of an "elimination of telephone barrier" that enjoins and restrains Defendants from "initiating or maintaining any telephone contact, interactive voice response navigation, or verbal self-reporting to maintain eligibility for healthcare services," from "cancelling, delaying, or suspending any pending medical referral, authorization, or community care placement based on [Plaintiff's] non-response to telephone communications," and from "conditioning any diagnostic, evaluative, or therapeutic medical service on verbal self-reports of clinical symptoms by [Plaintiff]." (ECF No. 3 at 30.)

Further, Plaintiff requests one or two alternative forms of relief: Plaintiff's preferred option is for the Court to compel Defendant McDonough to "(1) issue a binding letter of credit, direct payment authorization, or guaranteed funding commitment to Clinique Valmont… (2) include Hui Xiang Currey and the minor child L.C. in all accompanying travel and accommodation authorizations as clinically necessary…" *Id.* Alternatively, in the event this option is determined by Defendants to be administratively impossible within the deadline, Plaintiff requests the Court compel Defendant McDonough to "(1) issue an expedited, non-discretionary Foreign Medical Program (FMP) eligibility and authorization determination for Plaintiff, Hui Xiang Currey, and L.C.; [and] (2) transmit an official, binding confirmation letter to Clinique Valmont certifying FMP coverage and executing a 30-day accelerated reimbursement commitment for all incurred clinical costs." *Id.*

Lastly, Plaintiff requests the Court transmit a list of medical records to Hui Xiang Currey via Secure Message, accelerate FMP reimbursement processing, and provide interim therapeutic support for L.C. *Id.*

Because Plaintiff has not stated a cognizable claim, Plaintiff cannot show a likelihood of success on the merits as required for preliminary injunctive relief to issue. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth the factors a court considers in deciding whether to issue a temporary restraining order); *Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating the analysis for temporary restraining

orders and preliminary injunctions is "substantially identical"). Likelihood of success on the merits is the most important *Winter* factor, and it is relevant to the court's evaluation of the other factors. *See Baird v. Bonta*, 81 F.4th 1036, 1044 (9th Cir. 2023). Without showing a likelihood of success on the merits, Plaintiff cannot establish that a temporary restraining order or preliminary injunction is appropriate. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). Accordingly, the Court recommends Plaintiff's motion for a temporary restraining order be denied.

**CONCLUSION**

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) be GRANTED.

2. The Clerk of Court shall TERMINATE plaintiff L.C. from this action on the docket.

Further, it is HEREBY RECOMMENDED that:

1. Plaintiff's Section 504, Fifth Amendment Due Process, APA, and IIED claims (ECF No. 1) be DISMISSED with leave to amend;

2. Plaintiff's Mission Act claim be DISMISSED without leave to amend; and

3. Plaintiff shall have thirty (30) days from the date of this order to file a First Amended Complaint, if he so chooses. Failure to amend the Complaint within thirty (30) days will result in a recommendation of dismissal for failure to prosecute.

4. Plaintiff's motion for a temporary restraining order (ECF No. 3) be DENIED.

In light of these recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this action are STAYED pending resolution of the findings and recommendations. With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any motions and other filings until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: June 10, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

7, curr.26cv2079

14